Bureau of Shipping. We disregard this small difference.

Since the charter provided for determination of the dead-weight tonnage pursuant to the International Load Line Convention, plaintiffs are entitled to recover for the use of the vessel under the War Shipping Administration charter $3.00 per dead-weight ton per month based upon a tonnage of 2,507 tons, which the certificate of the Bureau of Shipping shows was determined pursuant to the International Load Line Convention. This amounts to $139,138.50. From this, however, there is to be deducted the sum of $34,634.03, which amount has already been paid plaintiffs.

 3. As heretofore stated, the vessel became a constructive total loss on December 27, 1943. Option I in Part I, Article E, of the War Shipping Administration charter, reads:

"E.  Total Loss Valuation:

"*Option I*.—The sum of $65.00 per dead-weight ton computed in accordance with General Order No. 9 of the Charterer * * *."

The War Shipping Administration charter also provided for the payment of an additional $5.00 per dead-weight ton for each knot, or major fraction thereof, over 8½ knots. The certificate of the American Bureau of Shipping declares that this vessel had a speed of 10 knots. This was the representation made by the owner in the War Shipping Administration charter.

The valuation of the vessel is, therefore, as the parties apparently agree, to be computed at $75.00 per dead-weight ton. As we said in the discussion of the charter hire to be paid for the vessel, her dead-weight tonnage is 2,507 tons. The amount to be paid for the loss of the vessel is, therefore, $188,025.00. From this sum there is to be deducted the payment by the defendant of $100,000 on January 26, 1945.

Under the charter the plaintiffs are entitled to interest on $188,025.00 at the rate of 3½ per cent per annum beginning 120 days from December 27, 1943, the date of the vessel's loss, until January 26, 1945; and interest at the same rate on $88,025.00 from January 26, 1945, until paid.

4. The charter also provided that the owners are entitled to the value of the consumable stores on board the vessel at the time of her delivery to defendant. We have found that the value of these stores is $2,073.49.

Plaintiffs are not entitled to interest on this amount, nor on any other item of their claim except for the loss of the vessel.

On the whole case plaintiffs are entitled to recover the sum of $235,150.27, plus interest on $188,025.00 at 3½ per cent per annum beginning 120 days from December 27, 1943, until January 26, 1945, and interest at 3½ per cent per annum on $88,025.00 from January 26, 1945, and continuing until paid.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges.

## SUDAMETAL SOCIEDAD ANONIMA SUD AMERICANA DE METALES Y MINERALES v. UNITED STATES.

### No. 46104.

United States Court of Claims.

June 5, 1950.

552

Jack L. Rappaport and Harry T. Zucker, New York City, for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

In view of the Supreme Court's decision of March 27, 1950, in the case of United States v. Commodities Trading Corporation, 339 U.S. 121, 70 S.Ct. 547, the defendant's motion for a new trial in the instant case must be allowed. In the Commodities case, the Supreme Court held that in the absence of unusual circumstances the ceiling price determined the measure of just compensation for the requisitioning of property.

In the instant case we allowed plaintiff just compensation based upon 54.79 cents a pound for the 54,180 pounds of tin which defendant requisitioned. However, the ceiling price for tin to be exported was 53 cents a pound. It is, therefore, necessary that the conclusion of law heretofore filed on February 6, 1950, be vacated and withdrawn. In lieu thereof, judgment is now entered for plaintiff in the sum of $14,302.87, plus an amount to compensate plaintiff for the delay in payment computed on $28,715.40 from September 10, 1942, to June 10, 1943, at 4 percent per annum, and plus an additional amount computed at the same rate on $14,628.60 from May 2, 1944, until paid. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judge, concur.